755 So.2d 1208 (1999)
CITY OF GRENADA, Mississippi, Appellant,
v.
WHITTEN AVIATION, INC., Appellee.
No. 98-CA-00645-COA.
Court of Appeals of Mississippi.
August 3, 1999.
Rehearing Denied October 26, 1999.
*1209 Forrest W. Stringfellow, Quentin A. Daniels, Jackson, Attorneys for Appellant.
*1210 Barrett Jerome Clisby, Oxford, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
IRVING, J., for the Court:
¶ 1. On April 7, 1992, Gladys M. Whitten, on behalf of Whitten Aviation, Inc. (Whitten) executed a lease with the City of Grenada (City) for the purpose of becoming a general "fixed base operator" or "FBO" at the Grenada Municipal Airport. A fixed base operator essentially functions as a service station for aircrafts at an airport. On May 20, 1997, Whitten Aviation, Inc. filed its complaint against the City, Maurice Azain, Jr. (Azain), and James Cummins (Cummins), all jointly and severally, alleging breach of contract, tortious interference with contract, and negligence per se.
¶ 2. By consent order entered on August 7, 1997, the matter was set for trial on January 14, 1998, with a pre-trial conference on January 12, 1998. On January 12, 1998, Whitten filed a motion in limine seeking to prohibit the introduction of any evidence at trial relating to any facts or circumstances outside the terms of the lease. This motion was granted, and the case went to trial on the sole issue of breach of contract. A verdict was returned for Whitten with damages assessed at $400,000. The City filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial or a remittitur. This motion was denied and the City has appealed, assigning the following issues as error:

I. WHETHER THE TRIAL COURT IMPROPERLY ATTEMPTED TO EXERCISE JURISDICTION OVER THE APPELLEE'S UNDERLYING SUIT WHERE THE APPELLEE DID NOT COMPLY WITH THE JURISDICTIONAL NOTICE OF CLAIM PRE-FILING REQUIREMENTS OF MISSISSIPPI CODE ANNOTATED SECTION 11-46-11.

II. WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW IN INTERPRETING THE LEASE TO REQUIRE WRITTEN NOTICE FROM THE CITY REGARDING ANY DEFAULT BY WHITTEN AVIATION, INC. OF THE PROVISIONS OF THE LEASE PRIOR TO CANCELLATION, EVEN WHEN WHITTEN REPUDIATED THE ENTIRE LEASE, AND EVEN THOUGH A SEPARATE PROVISION, FULLY CAPABLE OF BEING HARMONIZED WITH THE WRITTEN NOTICE PROVISION, PROVIDED THE CITY WITH A SEPARATE, LIMITED RIGHT TO IMMEDIATELY TERMINATE THE LEASE.

III. WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW IN INTERPRETING THE PURPORTED "RENEWAL OPTION" OF THE LEASE WHICH WAS VOID AS A MATTER OF LAW, IN SUCH A WAY AS TO ALLOW THE JURY BELOW TO AWARD DAMAGES THROUGH THE YEAR 2002, EVEN WHERE THE LEASE ITSELF WAS TO EXPIRE ON MARCH 31, 1997, BY ITS OWN TERMS.
¶ 3. We find no error as to issue I. Finding error as to issues II and III, we reverse and remand.

FACTS
¶ 4. The FBO Lease Agreement between Whitten and the City contained approximately twenty-five paragraphs, the interpretation of three of which were at issue in the trial court. We set forth those paragraphs *1211 and one other which we feel is helpful in our resolution of the issues presented. The provisions of paragraph XVI of the lease form the basis of Whitten's suit; it reads as follows:
In the event Lessee [Whitten] defaults under any of the terms hereof and fails to remedy such default within twenty (20) days after written notice of Lessor [the City], this lease or any renewal or extension hereof may be canceled by Lessor by notice of cancellation in writing mailed to lessee, certified mail, postage fully prepaid, and such cancellation shall become effective fifteen (15) days from and after the date of such notice of cancellation.
¶ 5. The City's defense was that it was entitled to terminate the lease, in accordance with the "immediate termination" provisions of paragraph X of the lease agreement, for a breach of the terms and conditions of that paragraph. Paragraph X addresses aviation fuel equipment, dispensing, handling, storage, and the obligation of Whitten with regard to the same. It provides:
The term "Aviation Fuel", as used herein, includes aviation propellants of every kind and character, including gasoline, kerosene, oil and grease, or other as may be defined by state or federal law or regulation. The compliance with all state and federal regulations and laws concerning fuel storage facilities, including leased real or personal property, shall be the Lessee's [Whitten's] responsibility and cost. Further, if the Lessee [Whitten] chooses to lease fuel facilities and/or equipment from a third party supplier, then the Lessee [Whitten] shall be solely responsible for their safe and lawful operation and maintenance. All leased or owned fuel facilities shall be brought into compliance with all local, state, and federal rules, regulations, and laws at the Lessee's [Whitten's] expense. Any additional local, state, and federal rule, regulation, and law affecting the operation and maintenance of leased fuel facilities and equipment which becomes effective during the term of this lease shall also be the sole responsibility of the Lessee [Whitten] for the costs of compliance. The expense of any monthly (or other interval) testing, inspections or other similar activity shall be conducted solely at the expense of the Lessee [Whitten], and all such test results shall be immediately provided to the Lessor [the City]. Should a spill, leak or other failure occur from the operation of leased or owned fuel facilities or equipment, the Lessee [Whitten] shall pay all costs of any Environmental Assessment, engineering, or clean up costs which may be necessary as mandated by the appropriate local, state, or federal agency.

Failure to comply with any or all of the requirements contained within this Section shall be grounds for immediate termination of the lease at the discretion of the Lessor. (emphasis added).
¶ 6. Paragraph I, which contains the so-called "renewal option" for the lease agreement, provides as follows:
Lessor [the City] does hereby lease, let and demise to Lessee, subject to the terms and conditions herein stated, for an initial period beginning April 1, 1992 and ending March 31, 1997, with the right to extend said lease for an addition [sic] term of five (5) years, upon such terms as agreeable between the parties and upon written notice of at least sixty (60) days in advance of the expiration of the lease, if it is determined by Lessor [the City] that Lessee [Whitten] has performed its obligations under this lease in a satisfactory and lawful manner by providing suitable and reasonable services by complying with the minimum standards required by federal, state and city statutes, ordinances or regulations, located at the Grenada Municipal Airport. *1212 In the event that the parties are unable to reach terms acceptable to both, then this option shall be terminated and be null and void and have no effect.
¶ 7. Paragraph V addresses payment of rent and provides that the City may declare the lease agreement void if rent is not paid in a timely manner. The specific provisions are as follows:
The prompt payment of monies herein-above provided shall be of the essence hereof, and, if not promptly paid when due on or before the fifteenth day of each month, this lease shall become immediately void at the option of the Lessor, upon notice of which the Lessee will immediately vacate said premises and surrender possession thereof to Lessor without diminution of the liabilities of Lessee. A schedule of fees charged shall be furnished monthly by the Lessee to the Lessor and the Lessor shall audit Lessee's books on a yearly basis, in January of each year.
¶ 8. The following is a chronology of events leading up to the suit:
October 23, 1995: Whitten sends letter, almost one and one-half years in advance of the stated expiration date of the FBO lease, March 31, 1997, purporting to request a renewal of the FBO Lease Agreement;
December 21, 1995: Whitten requests renewal of other leases with City for hangars at the Grenada Airport; when informed that these leases would have to be awarded by bid pursuant to state law, Willie Whitten informed James Cummins (airport manager) that he was "out of there," and that the fuel farm fixed base operation would be discontinued as of March 31, 1996, which date was a year before the FBO Lease Agreement was to expire, and the exact date when Whitten's alleged "lucrative" agreement for fueling military aircraft expired;
December 26, 1995: Whitten is informed, by hand-delivered letter, of the City's understanding that Whitten would not be operating as FBO beyond March 31, 1996. Deficiencies in the FBO-leased premises noted therein, including improper, non-compliant fuel handling/storage in violation of local, state, and federal regulations;
December 27, 1995: Letter from Whitten, attempting to re-negotiate hangar lease, not FBO lease;
December 29, 1995: Inspection conducted of the FBO-leased premises; numerous violations noted, including improper fuel handling/storage;
January 9, 1996: Meeting of Grenada City Council wherein Willie Whitten was in attendance; Council Minutes reflect the following action taken: Motion was made to void all contracts with Whitten Aviation; to include the airport managers contract, to authorize the City Manager and James Cummins to work with Whitten Aviation for a reasonable time (60 days) to negotiate an acceptable Fixed Base Operator (FBO) contract and present it to the Council for review by George Thornton.... Motion carried;
Jan.-Mar. 1996: City and Whitten negotiate unsuccessfully for different FBO Lease Agreement;
February 9, 1996: Whitten sends letter to City, stating that because FBO lease agreement was "terminated," Whitten would be leaving as FBO on March 31, 1996; Whitten leaves as FBO on March 31, 1996.

ANALYSIS OF ISSUES PRESENTED

I. DID THE TRIAL COURT IMPROPERLY ATTEMPT TO EXERCISE JURISDICTION OVER THE APPELLEE'S UNDERLYING SUIT WHERE THE APPELLEE DID *1213 NOT COMPLY WITH THE JURISDICTIONAL NOTICE OF CLAIM PRE-FILING REQUIREMENTS OF MISSISSIPPI CODE ANNOTATED SECTION 11-46-11?
¶ 9. In support of its contention that the trial court improperly exercised jurisdiction over this cause, the City argues that Miss.Code Ann. § 11-46-3 (1972), ( also known as Mississippi Tort Claims Act or "MTCA") provides that a political subdivision, such as the City herein, has total immunity from any suit "on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract." (emphasis added). The City goes on to argue that by virtue of Miss.Code Ann. § 11-46-7 the legislature has stated unequivocally that the remedies provided by MTCA are exclusive for any acts of a governmental entity and any suit brought against a governmental entity shall be brought only under the provisions of this chapter. Further, contends the City, it is well established law that failure to comply with the written notice of claim provisions of § 11-46-11 deprives a trial court of jurisdiction over the case.
¶ 10. Inasmuch as Whitten failed to comply with § 11-46-11 in any form whatsoever argues the City, the trial court never had proper jurisdiction of this cause and therefore, the judgment entered below should be reversed and rendered in favor of the City. This Court finds that the City is incorrect in its assertions on this issue and we affirm the lower court's judgment.
¶ 11. Miss.Code Ann. § 11-46-3 (1972) provides, in pertinent part, as follows:
Declaration of legislative intent.
(1) The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor. (emphasis added).
¶ 12. The City, in attempting to apply MTCA to the facts in the case at bar, has taken the phrase "breach of implied term or condition of any warranty or contract" out of context. The clear intent of the legislature in enacting MTCA was to immunize the state and its political subdivisions from any tortious conduct, including tortious breach of implied term or condition of any warranty or contract. The provisions of MTCA have no application to a pure breach of contract action as is the subject of the case at bar.
¶ 13. The case of Churchill v. Pearl River Basin Dev. Dist., 619 So.2d 900, 903 (Miss.1993) holds as follows:
Sovereign immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory. Miss. State Department of [Public] Welfare v. Howie, 449 So.2d 772 *1214 (Miss.1984); Cig Contractors v. Miss. State Bldg. Comm'n, 399 So.2d 1352 (Miss.1981). As we stated in Cig Contractors: The general rule is that when the legislature authorizes the State's entry into a contract, the State necessarily waives its immunity from suit for a breach of such contract. 81A C.J.S. States S 172 (1977). Where the state has lawfully entered into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal. There is no mutuality or fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations.
¶ 14. Even though Whitten plead numerous theories of recovery in its complaint, including tortious breach of contract and breach of contract, the only theory proceeded on at trial was breach of contract. The lower court dismissed all defendants related to any tortious conduct, limited all evidence to that dealing solely with breach of contract and prohibited the introduction of any evidence dealing with any tortious conduct.
¶ 15. Since breach of contract claims are clearly unaffected by the provisions of MTCA, the notice required under § 11-46-11 was not applicable. The circuit court properly exercised jurisdiction over the breach of contract claim asserted by Whitten.

II. DID THE TRIAL COURT ERR AS A MATTER OF LAW IN ITS INTERPRETATION OF PARAGRAPHS X AND XVI OF THE LEASE AGREEMENT?

STANDARD OF REVIEW
¶ 16. The standard of review for questions concerning the construction of contracts are questions of law that are committed to the court rather than to the fact finder. Miss. State Highway Comm. v. Patterson Enters., Ltd., 627 So.2d 261, 263 (Miss.1993). Appellate courts review questions of law de novo. Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. Cooper v. Crabb, 587 So.2d 236, 239, 241 (Miss.1991). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. Id. at 241. Instead, when construing a contract, the court will read the contract as a whole, so as to give effect to all of its clauses. Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss.1992). One should look to the "four corners" of the contract whenever possible to determine how to interpret it. McKee v. McKee, 568 So.2d 262, 266 (Miss.1990). Therefore, when interpreting a contract, the court's concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Simmons v. Bank of Miss., 593 So.2d 40, 42-43 (Miss.1992).
¶ 17. At the trial of this matter, Whitten argued that the only means available to the City to terminate its FBO lease agreement with Whitten was by following the procedures set forth in paragraph XVI of the lease. Paragraph XVI requires that the City give Whitten written notice prior to cancellation of the lease. Additionally, paragraph XVI requires that the City provide written notice of cancellation by certified mail with such cancellation becoming effective fifteen (15) days after such notice. The lower court agreed with Whitten and found, in effect, that the notice provision of paragraph XVI was the only means by which the City could lawfully terminate the lease. This Court disagrees. We find that the trial court's interpretation of the notice requirement of paragraph XVI was erroneous as a matter of law, and this error in interpretation further served as *1215 the basis for numerous exclusions of relevant evidence, and resulted in improper instructions being given to the jury.
¶ 18. In construing particular provisions of a contract, the instrument as a whole will be looked to, and its meaning determined from the entire agreement as written. Lampkin v. Heard, 137 Miss. 523, 102 So. 565 (Miss.1925). In Benefit Trust Life Ins. Co. v. Lee, 248 Miss. 715, 729, 160 So.2d 909, 915 (1964) the supreme court said:
In 29 Am.Jur., 632, 633, Insurance, Sec. 250, the textwriter says: `In determining the intention of the parties to an insurance policy, the policy should be considered and construed as a whole, and if it can reasonably be done, that construction will be adopted which will give effect to the whole instrument and to each of its various parts and provisions. The policy must be viewed by its four corners, and all parts and clauses must be construed to determine if and how far one clause is modified, limited, or controlled by others. Seeming contradictions should be harmonized if reasonably possible. A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent. William Soukoup v. Employers' Liability Assurance Corporation, Limited (1937), 341 Mo. 614, 108 S.W.2d 86, 112 A.L.R. 149; Wyatt v. Wyatt (1953), 239 Minn. 434, 58 N.W.2d 873; English v. Virginia Surety Co. (1954), 196 Tenn. 426, 268 S.W.2d 338.
(emphasis added).
¶ 19. By holding that paragraph XVI required that the City give written notice in accordance with the provisions of paragraph XVI for any breach by Whitten and by refusing to admit any evidence of a breach by Whitten, notice of which had not been given in accordance with paragraph XVI, the lower court entirely neutralized paragraph X of the agreement. Under the holding of Benefit Trust and well established jurisprudence in our state, such a construction should not have been adopted since the agreement is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent of the parties. This Court holds that the lease agreement is susceptible of a construction that allows for termination under the provisions of paragraph XVI of the lease as well as paragraphs X and V. It is perfectly logical and consistent with the overall intent of the lease to read Paragraph XVI as providing the procedure to be utilized in giving notice of default generally where no specific authorization is given for immediate termination and to read paragraphs V and X, because of the nature of the subject matter addressed in those two paragraphs, as allowing immediate termination upon a breach of any of those provisions. Obviously, there cannot be an immediate termination if the City were required to go through the notice procedure specified in paragraph XVI.
¶ 20. Having thus determined that paragraph XVI did not provide the exclusive procedure for termination of the lease by the City, we find that the jury should have been allowed to consider evidence of any alleged breach by Whitten of the terms and conditions of paragraph X, which if accepted by the jury, would have allowed the City to terminate the lease in accordance with the "immediate termination" provision of that paragraph. The judgment of the lower court is reversed on this issue. We also note that on December 21, 1995, Whitten advised the City via James Cummins (airport manger) that Whitten would discontinue the fuel farm fixed based operation, effective March 31, 1996, and on February 9, 1996, Whitten sent a letter to the City advising that because the City had terminated the FBO lease agreement, *1216 he would be leaving as FBO on March 31, 1996. Apparently, Whitten, in the February 9th letter, was referring to the City's action in the January 9, 1996 council meeting. It would appear that Whitten cannot make a compelling argument that the City breached the lease agreement on January 9, 1996, when he had apparently abandoned the agreement himself on December 21, 1995. But because we are reversing for other reasons, we do not reach a decision as to whether Whitten's action would be a complete bar to his breach of contract action. We merely point it out for the trial court's consideration on retrial.

III. DID THE COURT ERR AS A MATTER OF LAW IN ITS CONSTRUCTION OF PARAGRAPH I OF THE LEASE AGREEMENT REGARDING THE PURPORTED RENEWAL OPTION WHICH WAS VOID AS A MATTER OF LAW?
¶ 21. Our finding on issue II renders this issue moot on this appeal. However, because on a retrial of this matter, the issue concerning damages emanating from loss of the renewal term will likely be an issue again, we will address it now so that the trial court may have proper guidance on this matter.
¶ 22. The lease agreement grants a right of extension of the lease agreement for an additional five-year term "upon such terms as agreeable between the parties ... if it is determined by [City] that [Whitten] has performed its obligations under [the] lease in a satisfactory and lawful manner...." The City, citing Giglio v. Saia, 140 Miss. 769, 106 So. 513, 513 (1926) and several of its progenies, argues that an option, which "does not set forth the essential terms required to form a valid contract, is not enforceable." We agree.
¶ 23. The option to renew provision construed in Giglio was as follows:
The party of the second part is to have the right and privilege of renting said store for another period of five years at the termination of this contract, upon such terms and for the payment of such rent as may be agreed upon between the parties hereto at that time, necessary repairs to be made by party of the first part.

Id.
¶ 24. In declining to enforce the renewal provision, the Giglio court taught:
The specific performance of a contract will not be decreed unless it is certain in its terms. Tested by this rule the specific performance here sought cannot be decreed, for the renewal agreement not only does not set forth the terms on which the appellant may rent the building for another period of five years, but, on the contrary, expressly provides that he may do so "upon such terms and for the payment of such rent as may be agreed upon between the parties hereto." This leaves everything pertaining to the renewal open for determination by the parties thereto except the period of time for which it is to run. That is to say, they must agree on not only the amount of rent to be paid, but upon the conditions, covenants, and limitations on which the lessor may be willing to renew the lease. Renewal agreements much more specific than this one in that they leave only the renewal rental to be fixed by future agreement between the parties have generally been held unenforceable and void for uncertainty and indefiniteness.
Giglio, 106 So. at 513.(citations omitted).
¶ 25. As in Giglio, the option provision before us today leaves for a later determination all of the terms and conditions of the renewal term, except the duration of the term. Further, renewal is contingent upon the City's finding that Whitten has performed its obligations under the primary *1217 term. As contended by the City, upon the authorities cited, this option is unenforceable. It necessarily follows that if the option is unenforceable, no damages may be predicated upon it.
¶ 26. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED AGAINST WHITTEN AVIATION, INC.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.