825 So.2d 691 (2002)
Joyce Jeanette MARTIN, Appellant,
v.
FLY TIMBER COMPANY, INC., Appellee.
No. 2000-CA-02113-COA.
Court of Appeals of Mississippi.
May 14, 2002.
Rehearing Denied September 3, 2002.
*693 Larry O. Lewis, Mark J. Grai, attorneys for appellant.
Robert S. Cooper, attorney for appellee.
Before KING, P.J., THOMAS, and MYERS, JJ.
THOMAS, J., for the court.
¶ 1. On September 22, 1994, Tri Lakes Timber Company ("Tri Lakes") paid Joyce Jeanette Martin $3,897 in consideration for the right to harvest all merchantable timber from her property. On December 28, 1994, Tri Lakes sold this deed as well as a timber deed to an adjacent property to Fly Timber Co. ("Fly") for $110,000. Martin's claim that the deed was vague and ambiguous was found to be without merit by the lower court. Aggrieved, Martin asserts the following issues of error:
I. THE LOWER COURT ERRED IN FINDING THAT THE WARRANTY TIMBER DEED FROM MATIN TO TRI LAKES TIMBER WAS UNAMBIGUOUS AND SPECIFICALLY CONVEYED ALL MERCHANTABLE TIMBER ON MARTIN'S PROPERTY.
II. THE LOWER COURT ERRED IN FAILING TO REFORM THE DEED TO REFLECT THE INTENT OF THE CONTRACTING PARTIES, MARTIN AND TRI LAKES TIMBER.
III. FLY TIMBER SHOULD BE HELD LIABLE FOR CUTTING MARTIN'S TIMBER.
Finding no error, we affirm.

FACTS
¶ 2. On September 22, 1994, Tri Lakes left a timber deed with Martin so that she might review the document with her attorney. When the representative for Tri Lakes returned, Martin had signed the deed and had it notarized. Martin admitted having it notarized but testified that she did not consult with an attorney. Tri Lakes paid Martin $3,897 in consideration of the timber deed. The deed was properly filed and the check was cashed.
¶ 3. On December 28, 1994, Tri Lakes sold all its rights to the timber rights on the Martin property to Fly. Fly also purchased the rights to timber on a parcel of land adjacent to Martin's property. Fly paid $110,000 as the total price for the *694 right to timber on the Martin property and the adjacent property.
¶ 4. Almost a year after the formation of the timber deed, Fly began preparations to harvest the timber on the Martin property. Both Fly and Martin admit that sections of the fence and gate surrounding her property were taken down so that the heavy machinery could gain access to the property. On September 22, 1995, Martin sent Tri Lakes a letter complaining about the gate and fence being left in a state of disrepair. This letter did not mention any erroneously cut trees or make any other complaint about the condition of the land. Tri Lakes responded that they had conveyed the rights to her timber to Fly.
¶ 5. When Martin's attorney contacted Fly about repairing the fence and gate, Fly explained that the job was not complete and they needed more time to have access to the Martin property. Almost a year later, Willis Ridge, a Fly employee, returned to complete the job. Martin testified that she prohibited Ridge's entrance on her land, stating that they had already cut the timber to which they were entitled. To the contrary, Ridge testified that Martin was extremely displeased with the state of her fence and gate. Martin accompanied Ridge and showed him an alternative route, enabling Fly to access the property without further damage to the gate and fence. Ridge further stated that Martin never mentioned her disapproval of the amount of timber being cut on her property at that time. Instead, she mentioned that she was planning to build a lake on the property and asked him if Fly could leave the leftover tree tops in piles. Ridge explained that he could not do that as a matter of cost. Days later, Ridge accessed parcel two via crossing a neighbor's property and began cutting the timber. After cutting for two or three days, attorneys representing Martin arrived and ordered them to stop cutting.
¶ 6. Martin filed a complaint against Tri Lakes and Fly on August 5, 1996, claiming that the timber deed conveying timber rights on her real property had been prepared through mutual mistake or fraudulent action taken by representatives of Tri Lakes. She claimed that timber was being cut in areas outside of where the deed designated as the area to be cut and that an excessive amount of timber was being cut. Before any answers were filed, both Tri Lakes and Fly agreed to the entry of a preliminary injunction wherein they agreed to discontinue the harvest of timber on the Martin property pending the disposition of the action on its merits.
¶ 7. Tri Lakes answered on September 12, 1996, denying Martin's allegations as to the deed and counter-claiming that there was no mutual mistake or fraud and inferring that Martin was guilty of tortuous interference with Tri Lakes' assignment to Fly. Fly answered on May 30, 1997, denying any wrongdoing and counter-claiming that Martin had interfered with their rights to complete the job of harvesting the timber. Fly also filed a counter-claim against Tri Lake, claiming that if Martin were correct about the Martin/Tri Lakes timber deed, Tri Lake would have breached its warranty of title under the timber deed. On these grounds Fly would request indemnification. Tri Lakes answered this claim with an admission that good title was warranted and that the disputes between Martin and Fly were unrelated to the timber deed.
¶ 8. Trial was scheduled for September 15, 1999. The day before trial, Tri Lakes filed for protection under Chapter Seven of the United States Bankruptcy Code. As a result of this filing, Martin chose to proceed against Fly only and the trial date was reset. A trial was held on May 24, *695 2000, before the Chancery Court of DeSoto County.
¶ 9. After hearing all of the evidence, the chancellor held that the deed was unambiguous and specifically conveyed all merchantable timber on Martin's property to Tri Lakes. The chancellor further found that Tri Lakes properly prepared and recorded the deed on October 17, 1994. The chancellor also found that Martin did not show that she was the victim of any kind of fraudulent acts taken by Tri Lakes or Fly. Finally, the chancellor dissolved the preliminary injunction and granted Fly forty-one days from the decree to complete the harvest of timber on the Martin property. We quote the chancellor extensively:
The matter before the court involves an all too familiar scenario whereby a party enters into a contract without legal representation or advice only to discover later that the terms of the agreement have more far-reaching ramifications that originally anticipated. While the timber warranty deed executed by the plaintiff is very specific and unambiguous in that it conveys all merchantable timber existing on the property in question, the plaintiff now maintains that it was her understanding in executing the agreement for the benefit of the defendant that only a small strip of timber would be cut, and not merchantable timber across the entire acreage. Nowhere in the evidence except the verbal assertion of the plaintiff is such an understanding between the parties found. A contract is sufficiently definite if it contains matters which will enable the court under proper rules of construction to ascertain its terms. Duke v. Whatley, 580 So.2d 1267 (Miss.1991). Although the plaintiff now contends that the written agreement by way of the warranty timber deed was not as she agreed, the document is clear on its face to this court.
In her case in chief, the plaintiff attempts to show an inadequacy of consideration for the conveyance in order to bolster her contention that the deed was incorrectly drawn. However, there is no showing whatsoever of any fraud or duress in the execution of the document. Absolutely no fraud or duress was proven in this case. Accordingly, this court will not question the adequacy of consideration. Patterson v. Merchants Truck Line, Inc., 448 So.2d 288 (Miss.1984).

STANDARD OF REVIEW
¶ 10. Generally, this Court will not reverse a chancellor's findings unless they are manifestly wrong, clearly erroneous, or an erroneous legal standard was used. Anderson v. Kimbrough, 741 So.2d 1041, 1044 (Miss.Ct.App.1999). It is also true that the standard of review for issues concerning the construction of a contract are questions of law that are reviewed de novo. City of Grenada v. Whitten Aviation, Inc., 755 So.2d 1208, 1214 (Miss.Ct. App.1999). However, in the case at hand, the plaintiff claimed mutual mistake and fraud which caused the chancellor to act as a fact finder, evaluating contrasting testimony and other forms of evidence during the trial. Bedford v. Kravis, 622 So.2d 291, 293-94 (Miss.1993). Therefore, the standard of review on appeal is that of manifest error, clear error, or an erroneous legal standard applied.

ANALYSIS

I. DID THE LOWER COURT ERR IN FINDING THAT THE WARRANTY TIMBER DEED FROM MARTIN TO TRI LAKES TIMBER WAS UNAMBIGUOUS AND SPECIFICALLY CONVEYED *696 ALL MERCHANTABLE TIMBER ON MARTIN'S PROPERTY?
¶ 11. It has been established that deeds are construed in a manner similar to contracts. Peoples Bank & Trust Co. v. Nettleton Fox Hunting & Fishing Ass'n, 672 So.2d 1235 (Miss.1996). The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties. Kight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989). Our supreme court has set out a three-tier approach to contract interpretation. Pursue Energy Corp. v. Perkins, 558 So.2d 349 (Miss.1990). First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975). If the language used in the contract is clear and unambiguous, the intent of the contract must be realized. Id. On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." Pursue Energy Corp., 558 So.2d at 352. If the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Id. However, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. Id. It is only when the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.
¶ 12. However, in the case at hand the language utilized in the contract is clear and unambiguous. Therefore, the intent of the contract must be realized. We agree with the chancellor that the contract clearly conveys all merchantable timber.
¶ 13. "A person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So.2d 1254, 1257 (Miss.1991) (citing McCubbins v. Morgan, 199 Miss. 153, 23 So.2d 926 (1945); Koenig v. Calcote, 199 Miss. 435, 25 So.2d 763 (1946)). It seems that Martin is guilty of either a failure of properly reviewing the contract before signing it, or realizing that she had sold her timber for an extremely low price and attempting to renege on the deal.

II. DID THE LOWER COURT ERR IN FAILING TO REFORM THE DEED TO REFLECT THE INTENT OF THE CONTRACTING PARTIES, MARTIN AND TRI LAKES TIMBER?

III. SHOULD FLY TIMBER BE HELD LIABLE FOR CUTTING MARTIN'S TIMBER?
¶ 14. Due to the fact that the first issue fails, these two issues are moot, as they are merely subsections of the first issue which are reliant on its success.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.