872 So.2d 769 (2004)
DIXIE SOUTH INDUSTRIAL COATING, INC., Appellant,
v.
MISSISSIPPI POWER COMPANY, Appellee.
No. 2003-CA-00110-COA.
Court of Appeals of Mississippi.
May 11, 2004.
*770 Dana J. Swan, Clarksdale, attorney for appellant.
Paul Richard Lambert, Jonathan P. Dyal, R. Mark Alexander, Jr., Gulfport, attorneys for appellee.
EN BANC.
THOMAS, J., for the Court.
¶ 1. Dixie South Industrial Coating, Inc. (Dixie) had a contract with Mississippi Power Company (MPC) to remove leadbased paint from a power plant. When MPC failed to allow Dixie to complete the project, Dixie filed a complaint alleging breach of contract. MPC requested and the trial court granted a motion for summary judgment. Dixie perfected an appeal to this Court asserting the following issue as error:

I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS MATERIAL ISSUES OF FACT REMAINED TO BE RESOLVED BY THE JURY BECAUSE A CONTRACT MAY BE MODIFIED BY PAROL EVIDENCE AFTER IT IS EXECUTED.
Finding no error, we affirm.

FACTS
¶ 2. Dixie is a Mississippi corporation that is in the business of sandblasting and painting located in Hattiesburg, Mississippi. Dixie also specializes in removing leadbased paint. There are two types of contracts generally entered into by Dixie, "hard money" and "time and materials." A "hard money" contract is an exclusive contract whereby the parties negotiate a total sum for labor, equipment, materials, and profit. The amount of profit varies by the accuracy of the estimate in relation to the actual amount of labor, equipment, and materials required to complete the project. A "time and materials" contract is a nonexclusive contract where Dixie charges an hourly rate for people and equipment and the other party pays according to the schedule set forth in the contract. A "time and materials" contract does not require a definitive amount of work to be performed. Dixie had previously entered into both types of contracts with MPC.
¶ 3. On December 9, 1997, MPC and Dixie executed a "time and materials" contract in which MPC agreed to pay Dixie its proposed rates for encapsulating lead paint for MPC at Plant Eaton in Petal, Mississippi. The contract indicated that work was to begin in January 1998 and was to be completed on December 31, 1998. Dixie admits that, based on prior dealings with MPC, contracts such as this were simply renewed at the end of the time period and another contract entered into. The contract stated that "time was of the essence" and required all modifications to be in writing. Dixie negotiated the terms of the contract with Phillip Gardner, an engineer at Plant Eaton. Dixie estimated that it would take a crew of thirty to thirty-five people working on the job to complete it in one year.
¶ 4. Work began in January and continued for several weeks with MPC allowing *771 a crew of only five or six people on the job. During this time, Dixie submitted invoices for labor, equipment, and materials used on the project to MPC, which were timely paid. After a few weeks, Gardner contacted Dixie and notified them that MPC was out of money on the project and it would have be halted as only $30,000 had been budgeted for the job. Obie Younce, husband of the president of Dixie, talked with Gardner several times in April or May 1998. According to Younce, Gardner told him that MPC had added funding for the project and that Dixie would soon be able to get back to work. When Younce later inquired about getting back to work, Gardner told him that the boilers were too hot and Dixie could come back later when the boilers and the weather were cooler. Gardner assured Younce that he liked the work and wanted the same crew to return.
¶ 5. During this time, a windstorm blew over a shack at the job site that belonged to Dixie. Younce was asked to move the shack, but Gardner agreed it was not in their way so Dixie righted the shack and tied it down. Some time shortly after this incident, Gardner notified Dixie that another contractor from Meridian would be coming in to remove the lead-based paint. Dixie filed suit against MPC seeking $5,000,000 in compensatory damages and $5,000,000 in punitive damages. Dixie asserted that oral modifications of the contract or verbal assurances were given indicating Dixie would be given the opportunity to finish the entire project.
¶ 6. In his deposition, Younce admitted that the contract was a "time and material" contract that expired on December 31, 1998, and had not been renewed. Younce also admitted that the contract did not state how many people Dixie was to have on the job, that it was MPC's right to control the number of people, and the contract did not state that the entire work was to be completed within one year. Younce further admitted that MPC paid every invoice Dixie sent. MPC subsequently filed a motion for summary judgment based solely on the express terms of the contract, evidence of payment of all invoices under the contract, and the sole testimony of Obie Younce.
¶ 7. In granting MPC's motion, the trial court found in its findings of fact and conclusions of law that the contract was a "time and material" contract and that MPC paid Dixie for all invoices submitted. Although Dixie claimed that it was verbally assured that it would be able to complete the entire project, oral modifications or verbal assurances do not modify a written contract.

I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT AS MATERIAL ISSUES OF FACT REMAINED TO BE RESOLVED BY THE JURY BECAUSE A CONTRACT MAY BE MODIFIED BY PAROL EVIDENCE AFTER IT IS EXECUTED?
¶ 8. Dixie asserts that the trial court erred in granting summary judgment, alleging in its brief that the contract provided that Dixie would remove all of the lead paint at Plant Eaton. Dixie alleges that it relied on Gardner's assurances to its detriment and that Gardner was acting on behalf of MPC. Dixie kept people on the payroll that worked on the job with MPC and purposely did not take any other bids during the winter because it expected work on Plant Eaton. Dixie asserts that parol evidence only applies to oral agreements prior to the execution of a contract and does not preclude subsequent parol modification of a written contract. Dixie therefore argues that material issues of fact remained to be resolved by the jury.
*772 ¶ 9. The standard of review for issues concerning the construction of a contract are questions of law that are reviewed de novo. City of Grenada v. Whitten Aviation, Inc., 755 So.2d 1208, 1214 (Miss.Ct.App.1999). "Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence." Id. (citing Cooper v. Crabb, 587 So.2d 236, 239, 241 (Miss.1991)). This Court is not to infer intent contrary to that in the contract. Cooper, 587 So.2d at 241. "Instead, when construing a contract, the court will read the contract as a whole, so as to give effect to all of its clauses." Whitten, 755 So.2d at 1214 (citing Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss.1992)). A grant of summary judgment is also reviewed de novo. Boyles v. Schlumberger Technology Corp., 832 So.2d 503, 506(¶ 5) (Miss.2002).
¶ 10. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The evidence must be viewed in the light most favorable to the nonmoving party, and that party is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss.1986). However, a mere allegation by the nonmovant that a dispute over material facts exists between the parties will not defeat a movant's otherwise properly supported motion for summary judgment. Reynolds v. Amerada Hess Corp., 778 So.2d 759, 765(¶ 9) (Miss.2000). In addition, a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
¶ 11. The Mississippi Supreme Court has set out a three-tiered approach for interpreting contracts. Martin v. Fly Timber Company, Inc., 825 So.2d 691, 696(¶ 11) (Miss.Ct.App.2002) (citing Pursue Energy Corp. v. Perkins, 558 So.2d 349 (Miss.1990)). First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975). If the language used in the contract is clear and unambiguous, the intent of the contract must be realized. Id. On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." Pursue Energy Corp., 558 So.2d at 352. If the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Id. However, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. Id. It is only when the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract. Martin, 825 So.2d at 696(¶ 11).
¶ 12. The "time and materials" contract that is the basis of this lawsuit is clear and unambiguous. Dixie concedes this fact and does not claim that it was the result of fraud, but only that it was modified by statements allegedly made by MPC engineer Phillip Gardner giving Dixie the exclusive right to return to Plant Eaton to perform the entire task of removing the lead-based paint. This Court does recognize that the parol evidence rule is not a bar to evidence of a subsequent modification of the contract. Kelso v. McGowan, 604 So.2d 726, 731 (Miss.1992). However, Younce admitted in his testimony that MPC had the right to control the number of people working on the project, that the *773 contract did not state that the entire job would be completed within the term of the contract and that it was unlikely to be completed within it, and that Dixie was paid in full for every invoice submitted to MPC.
¶ 13. There is therefore no material issue of fact remaining to be resolved by a jury. The contract between MPC and Dixie was based on a pay schedule with MPC having final control over the work. MPC exercised its control and paid for all work completed by Dixie. The contract expired in December 1998. This issue is without merit.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY GRANTING SUMMARY JUDGMENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.