257 So.2d 225 (1972)
Mrs. Martha Barron POLK
v.
GIBSON PRODUCTS CO. OF HATTIESBURG, INC., et al.
No. 46473.
Supreme Court of Mississippi.
January 17, 1972.
Rehearing Denied February 15, 1972.
M.M. Roberts, Hattiesburg, for appellant.
Dudley W. Conner, Hattiesburg, for appellees.
*226 BRADY, Justice:
This is an appeal from the Chancery Court of Forrest County, Mississippi, wherein the chancellor's final decree dismissed the appellant's bill of complaint with prejudice. From this adverse decree the appellant has perfected this appeal.
This cause of action arose out of an alleged breach of a ten year lease agreement dated March 1, 1963. This lease was between J.O. Barron, Jr., lessor, and Gibson Products Company of Hattiesburg, Inc., acting through its president, John D. Thomas, and John D. Thomas, individually, lessees. The term of the lease was for a period of ten years, commencing with the occupancy of the building to be constructed, or June 1, 1963, whichever was the earlier date. The basic issues of this controversy are the alleged breaches of this lease. Therefore, we consider the pertinent portions of the lease.
The building was constructed by the lessor and was occupied by "Gibson's", one of the lessees, on September 11, 1963, and rent became payable on that date.
On January 20, 1965, Mr. J.O. Barron, Jr., died testate and the property and the lease came under the control of Mrs. Martha McKnight Barron, the wife of Mr. J.O. Barron, Jr., and executrix of his estate.
On July 7, 1965, a "letter of agreement" between Gibson Products Company of Hattiesburg, Inc., hereinafter designated as Gibson's or appellee, and John D. Thomas, individually and as president of Gibson's, the lessees, and Mrs. Martha McKnight Barron, the executrix of the estate of J.O. Barron, Jr., the lessor, supplemented the lease of March 1, 1963, in certain specific areas.
On February 7, 1966, a letter from a C.P.A. was received by Mrs. Martha McKnight Barron, giving the net sales as taken from the books of Gibson's for the years 1963, 1964, and 1965. This letter was part of the letter of agreement entered into on July 7, 1965.
Mrs. Martha McKnight Barron died on June 30, 1967, leaving her property, including this lease, to her daughter and sole heir, Mrs. Martha Barron Polk.
On September 29, 1967, a meeting was held between John D. Thomas on behalf of the lessees and Mrs. Martha Barron Polk and her husband, Mr. Frank Polk. This meeting was to discuss the possibility of enlarging the floor space of Gibson's, and it resulted in a clash of personalities, to say the least, between John D. Thomas and Mr. Frank Polk. As a result of this development, meetings thereafter were held in October 1967 between Mr. John D. Thomas and Mrs. Martha Barron Polk's father-in-law, Mr. E.C. Polk. The record reveals that these meetings with Mrs. Martha Barron Polk and her father-in-law, *227 Mr. E.C. Polk, accomplished no results as far as enlarging the floor space of Gibson's is concerned, as was desired by Mr. John D. Thomas due to the fact that he anticipated severe competition from new discount stores such as Grants, Woolco and Rose. Grants and Woolco subsequently entered the trade area.
Mr. John D. Thomas on July 30, 1968, wrote a letter to Mrs. Martha Barron Polk advising her of his intentions to move, citing among other reasons, the failure of her father and mother and her failure to furnish the three to one ratio of parking space to floor space agreed upon in the lease and requesting her consent to sublease the premises. Mrs. Martha Barron Polk replied by letter on August 10, 1968, in which she refused to grant her permission to sublease, giving as her reason that she lacked sufficient knowledge as to whom and how lessees intended to have the sublease written and as to how this sublease would affect her financially. She stated that she expected the lease of March 1, 1963, as supplemented by the letter of agreement of July 7, 1965, to be fulfilled by Mr. John D. Thomas, individually, and Gibson's. Mrs. Polk further stated in her letter to Mr. Thomas that the lessor's part of the lease had been fulfilled and she expected the lessee to perform and fulfill his obligations under the lease. Mr. Thomas replied by letter to Mrs. Polk on September 14, 1968, in which he disagreed with her contention that the lessor had fulfilled all of the obligations and once again stated his intention to move and his desire to sublease the premises. He further advised lessee that if this was not agreeable he was willing to surrender and cancel the lease.
On November 16, 1968, Gibson's moved to its new location. The lessees on January 3, 1969, by letter notified the lessor that they intended to sublease the premises to Southern Fabrics, Inc. on February 1, 1969. In answer to this letter, on January 7, 1969, the lessor by letter to the lessees requested a meeting to discuss the consequences of the sublease. This meeting was held and on January 25, 1969, the lessees by letter notified the lessor that the property was to be subleased to Southern Fabrics, Inc., a discount fabric store. The lessor replied by letter on January 29, 1969, attempting to get the lessees to conform to their original lease as supplemented by the July 7, 1965, letter of agreement. The sublease was entered into between the sublessor, Gibson's, and John D. Thomas, individually, and the said sublessee, Southern Fabrics, Inc., on January 31, 1969. Southern Fabrics, Inc., hereinafter designated as Fabrics, Inc., moved in and occupied the premises on March 1, 1969.
Since Gibson's moved from the premises on November 16, 1968, the minimum monthly guaranteed rent of $1500 has been paid. On December 31, 1969, a bill of complaint was filed on behalf of Mrs. Martha Barron Polk, individually, and as executrix of the estate of Mrs. Martha McKnight Barron, deceased. The pleadings for the complaint charge failure of lessees to abide by the intent of the parties as shown in the original lease and the July 7, 1965, letter of agreement. The answer of the lessees denies the assertions of the lessor's bill of complaint and asserts that they have complied with the original lease and the letter amendment thereto. From an adverse decree dismissing that complaint with prejudice, the appellant has perfected this appeal.
Appellant assigns numerous errors but argues only four thereof. In determining the issues in this case, we will consider only those errors which we feel are essential in the disposition of this cause:
1. The court should have required the lessees to continue as occupants in operation of discount store on the premises through the entire ten year period of the contract, and which the court did not do.
2. The court erred in failing to recognize that there was no right or authority in lessees to sublease to Southern Fabrics, Inc.

*228 3. The court erred in permitting lessees to remove fixtures and improvements on the premises under the existing circumstances.
It is obvious that if the original lease as modified by the letter of July 7, 1965, requires the lessees to remain on the premises and to operate the discount store situated thereon for the entire ten year period of the contract, then the lessees would not have the right to sublease or to leave the premises. If this be true, then there is no need to consider any of the other errors assigned by the appellant. The language in this lease which is determinative of the issue of whether or not the lessees had a right to leave the premises and not remain thereon operating the discount store for the ten year period of time is as follows:
(RENTAL). The Lessees agree to pay to the Lessor a guaranteed minimum rental of $180,000.00, payable in monthly installments of $1,500.00 each, for the use and occupancy of said premises. Said monthly minimum rental is to be paid in advance, the first month's minimum rental installment becoming due and payable on the first day possession of the leased premises is taken by the Lessees, or June 1, 1963, whichever is the earlier date, and a like monthly minimum rental installment on the same day of each and every month thereafter during the life of this agreement; and the Lessees agree, in addition thereto, in the event the Lessees' annual gross sales exceed $1,200,000.00, to pay the Lessor an additional rental of one and one-half (1 1/2%) per cent of the annual gross sales in excess of $1,200,000.00. In the event the gross annual sales of the Lessees shall exceed $1,200,000.00 per annum so as to invoke the percentage rental herein provided, the Lessees shall continue during the course of the business year to pay the Lessor the minimum rental of $1,500.00 per month, which, upon the termination of the Lessees' business year, shall be credited to the rent computed to be due the Lessor under the minimum rental and said percentage rental, and the balance of the rent found to be due the Lessor shall be promptly paid by the Lessees. (Emphasis added.)
This Court takes knowledge of the fact that there is nothing in this language which specifically requires the lessees to remain on said premises in said building and to conduct therein a discount business. The substance of the requirements of the lessees is that they must pay the guaranteed minimum rental of $18,000 per year in monthly installments of $1500 each for the use and occupancy of said premises and that said monthly minimum rentals of $1500 must be paid in advance. Under the provisions of Accounting and Auditing in said lease we find this significant language:
... . The foregoing provisions regarding maintenance of sales records and furnishing of quarterly and annual statements shall be included in any sub-lease or concession agreement made or which may be made by the Lessees and third parties. Should any subtenant or the holder of a concession fail to comply with such provisions and thereby prevent the Lessees herein from complying in turn with the provisions of this article, then, nevertheless and notwithstanding everything to the contrary elsewhere contained herein, such non-compliance by the sub-Lessees herein shall not be deemed a default under this lease provided the Lessees shall immediately and forthwith take and diligently prosecute legal action to terminate such sub-tenancy or concession, and remove said subtenant or concessionaire from that portion of said premises occupied by it. It is distinctly understood that the Lessees guarantee the percentage rental which may be due from all annual sales made in, upon or from said demised premises. (Emphasis added.)
The last provision of the lease contract which has bearing on this assigned error is:
(ASSIGNMENT AND SUB-LEASING). It is agreed that the Lessees shall not have the right to assign, transfer or *229 sub-let the premises hereby leased, or any part thereof, without the written consent of the Lessor, which consent shall not be withheld unduly by the Lessor, and that this instrument constitutes the entire agreement between the parties hereto, and that no understanding, verbal or otherwise, shall alter the terms of this agreement unless reduced to writing and signed by all the parties hereto. (Emphasis added.)
The last paragraph of the lease executed on March 1, 1963, provides that all covenants and agreements in the lease shall extend to and be binding upon the heirs, devisees, executors, administrators, trustees in bankruptcy, successors in interest, and assigns of both the lessor and the lessees, and that "no modification of this lease shall be binding unless evidenced by an agreement in writing signed by the Lessor and the Lessees."
The letter of July 7, 1965 fails to disclose that there was any material variation of the terms and conditions of the original lease. It does disclose that the warehouse was to be built at the expense of the lessees and the lessor was to be given credit for the parking space lost by the erection of the warehouse building. Appellant contends that the letter of July 7, 1965, requires the conclusion that lessees would continue to use and occupy the premises for the entire ten year period with continuous occupancy and with the use limited to operation of a discount store.
Appellant in addition argues that, while the basic $1500 per month rent is being paid, the rental based on sales is not being paid, which would amount to approximately $10,000 a year because the lessees abandoned the premises and used the same as a warehouse or sought to do so until they entered into an unauthorized sublease with Fabrics, Inc., in violation of the lease contract. In addition, the lessor denies the lessee's contention that the lessor had never furnished the 72,000 square feet of parking space; that there was more than 72,000 square feet, and if there was insufficient parking space, this has been cured by the letter amendment of July 7, 1965.
In reply, the appellees-lessees maintain that there is nothing in the original lease or in the letter amending the same which requires Gibson's and John D. Thomas to pay the lessor anything other than the guaranteed annual rental of $18,000, payable in monthly installments of $1500 each during the ten year period of the lease. The appellees urge that the document itself only brings into consideration additional rentals "in the event the lessees' annual gross sales exceed $1,200,000," and that this computation is to be made only at the end of lessees' business year. Appellees seriously contend that there is nothing whatsoever in the contract which requires the lessees to occupy the premises and that this Court cannot write such a covenant into the contract for the benefit of the lessor. Moreover, the appellees argue that the original lease was violated by the original lessor, his wife who succeeded him, and the daughter who is the present lessor, in that there has been a complete failure on the part of all lessors to furnish the three to one parking space contemplated and agreed upon. Lessees urge that all rentals, specifically the $1500 per month, and all bonus rentals due under the additional rental agreement of one and one-half percent to be paid on all gross sales in excess of $1,200,000 less the $18,000 basic yearly rental have been paid. These rentals, appellees urge, were paid during the time that they used and occupied the premises. Since the building has been vacated by the lessees, no gross annual sales have exceeded $1,200,000 and lessees contend that the lessor cannot bring a suit for rent until said rent is due, citing Weir v. Cooper, 122 Miss. 225, 84 So. 184 (1920).
Both the appellant and the appellees rely upon Monsanto Company v. Cochran, 254 Miss. 399, 180 So.2d 624 (1965). In that case there was a fixed monthly rental of $100 plus a fixed amount to be paid for gasoline sales over 8,000 gallons per month which were sold at the service station. The controversy arose when the distributing *230 agent of the lessee oil company failed to report the full amount of gasoline delivered to and sold by the service station, which resulted in the failure of the lessee to pay all of the additional rent which was due based on the number of gallons delivered to the station. In that case the lessor subsequently received all rents due and this Court held that the general rule that courts of equity would not assess punitive damages applies.
Appellant relies on 23 Am.Jur. Fraud and Deceit section 173 (1939) as was done in Monsanto Company v. Cochran, supra, which is as follows:
Although the courts are in agreement upon the fundamental problem then in order to secure equitable relief on the basis of fraud, some injury or damage must be shown by the complainant, and have frequently applied this principle in cases where rescission on the ground of fraud is sought.
In the case at bar the appellant contends that they have shown damages suffered at least to the extent of the approximately $10,000 per year in bonus rentals, beginning with November 16, 1968. The appellees rely on the same case to support their assertion that the appellant failed to establish fraud by clear and convincing proof as required by law. The appellees also argue that since the guaranteed minimum rent had been paid, the appellant could not show any damages and no punitive damages could be assessed in the chancery court.
Appellees vigorously contend that there is nothing in the terminology of the lease which requires them to remain and conduct their business on the premises and in support thereof urge that contracts are solemn obligations and it is not the function of any court to make contracts for the parties but rather to construe them as written, citing Hewitt v. Frazier, 219 So.2d 149 (Miss. 1969) and Jones v. McGahey, 187 So.2d 579 (Miss. 1966), which they contend support the assertion of the appellees that they were not required to occupy the premises for the entire term of the lease. See also Security Builders, Inc. v. Southwest Drug Co., Inc., 244 Miss. 877, 147 So.2d 635, 149 So.2d 319 (1962).
Considering the second error assigned by the appellant-lessor, namely, that the appellees-lessees had no right to sublease the premises to Fabrics, Inc. without the express written consent of the lessor, lessor contends that since they did not know the terms of the lease, that they were under no obligation to consent to the subleasing. It should be remembered that the original contract expressly provides that there can be no sublease of the contract which modifies the original lease insofar as the covenants and agreements therein are concerned unless the lessor agrees in writing thereto. The record discloses that the same identical monthly rentals of $1500 per month, so that the $180,000 base rent will be paid, were incorporated in the sublease and also the obligation to pay one and one-half percent of all gross sales over $1,200,000 as provided for in the original lease is embodied in the sublease.
In passing, it should be noted that the appellant contends that it could have used the subleasing by the lessees of the premises to Fabrics, Inc. as a ground for forfeiture of the lease on the part of the lessees as is pointed out in Robertson v. Fuller, 212 Miss. 888, 56 So.2d 74 (1952). This the lessor did not want to do but in lieu thereof sought to require the lessees to remain on the premises and fulfill the original lease contract regardless of any rights to vacate the same or sublease the premises. The appellees contend that in accordance with the provisions of 51C C.J.S. Landlord and Tenant § 36 (1947) and under the provisions of the lease as to giving or withholding consent to an assignment or subleasing that the lessor could not unreasonably refuse to consent to an assignment or subleasing or impose unreasonable conditions as the price of the consent and that if he does, the lessee may sublease or assign without consent or, in a proper case, may enforce lessees' agreement as a covenant. *231 Appellees submit that the appellant unduly withheld its consent to sublease, that the appellant refused to accept the return of the property and the possession thereof, and therefore it became incumbent upon the appellees to mitigate, as much as possible, their damages. This appellees assert they did on February 1, 1969, by subleasing to Southern Fabrics, Inc., and in said lease requiring Southern Fabrics, Inc. to meet all of the obligations of the lessee under the original lease. Insofar as the payment of the $1500 flat monthly rental is concerned, this has taken place. The record discloses, however, that to date Fabrics, Inc. has not had gross sales exceeding $1,200,000 per year. The lessees earnestly assert that they were entitled to sublease the premises and that consent by the lessor was unduly withheld because the lessor had failed to fulfill the obligations of the original agreement on the part of her mother and father to provide lessees with the required three to one parking space. In addition, appellees assert that they had made repeated efforts to secure the requisite parking space and failing therein to obtain the lessor's consent to sublease the premises, appellees assert that the only condition upon which the lessor would agree to subleasing was that the lessees would guarantee that the lessor would not lose any financial benefits in the form of bonus rentals as a result of any subleasing agreement. Appellees-lessees further urge that the lessor arbitrarily declined to give written consent unless guaranteed that they would not lose financially, asserting that $10,000 was a fair bonus amount to be anticipated, and lessor refused the offer of the lessees to cancel or surrender the lease so that the lessor could lease to a new party on any terms they wished. The lessees assert that the lessor was acting unreasonably in the matter and unduly withheld her consent for the right of the lessees to sublease. Lessees finally assert that because of all the above stated assertions they were entitled to mitigate their damages as much as possible by subleasing to Southern Fabrics, Inc., a discount fabric store.
We fail to find any merit in the contention of the lessor that the lessee did not have the right to remove the fixtures and improvements on the premises as was done. Because of its clarity and the reasons set forth therein, we quote in part from the final decree of Chancellor Howard L. Patterson, Jr.
1. The Court finds that all basic rental payments due the complainant by the defendants, Gibson Products Company of Hattiesburg, Inc. and John D. Thomas, individually, under the original lease, dated March 1, 1963, between J.O. Barron, Jr., as Lessor, and Gibson Products Company of Hattiesburg, Inc. and John D. Thomas, as Lessees, have been fully paid to date.
2. The Court finds all bonus rentals under said original Lease Agreement have been paid through November 16, 1968, the date Gibson Products Company of Hattiesburg, Inc. moved the Gibson Discount Center from said leased premises.
3. The Court finds since the date of the Sub-Lease, January 31, 1969, between the Gibson Products Company of Hattiesburg, Inc. and John D. Thomas, as Sublessors, and Southern Fabrics, Inc., as Sub-lessee, that neither the Southern Fabrics, Inc., a Mississippi corporation, Sub-lessee, nor Gibson Products Company of Hattiesburg, Inc., and John D. Thomas, as Sub-lessors, have become liable for bonus rentals under the original lease, dated March 1, 1963, between J.O. Barron, Jr., Lessor, and Gibson Products Company of Hattiesburg, Inc. and John D. Thomas, Lessees, for the reason that the gross annual sales on said leased premises have not exceeded $1,200,000 per annum so as to invoke the percentage or bonus rentals provided in said original lease.
4. The Court finds the original lease, dated March 1, 1963, between J.O. Barron, Jr., as Lessor, and Gibson Products Company of Hattiesburg, Inc. and John *232 D. Thomas, as Lessees, did not prohibit the said defendants, Gibson Products Company of Hattiesburg, Inc. or John D. Thomas, individually, from removing from said leased premises so long as said tenants Gibson Products Company of Hattiesburg, Inc. and John D. Thomas, complied with the terms of said original lease between J.O. Barron, Jr., as Lessor, and Gibson Products Company of Hattiesburg, Inc. and John D. Thomas, as Lessees, dated March 1, 1963.
5. The Court finds the defendants, Gibson Products Company of Hattiesburg, Inc., and John D. Thomas, had a right to sublease the leased premises to the defendant, Southern Fabrics, Inc., in order to preserve the property leased and to minimize damages; and, the Court finds the parties made numerous attempts at negotiations regarding a possible sublease, both by mail and personal conferences between the parties and their authorized agents and representatives, which failed to produce any positive results due to apparent personality conflicts existing between some of the parties in the negotiation efforts.
6. The Court finds this cause was heard at length through several days of trial at the June, 1970, term of this court, and, at the conclusion of the taking of testimony in this case, the Court requested counsel to furnish contemporaneous memorandum briefs; and, by consent of counsel, said cause was taken under advisement for rendition of a final decree in vacation, and the Court finds it has authority to render a final decree in vacation, not only by the consent of the parties, but also by virtue of Section 1228 of the Mississippi Code of 1942, Annotated (Recompiled) as amended.
7. The Court finds the prayer of the bill of complaint should be denied, and said bill of complaint should be finally dismissed with prejudice at the cost of the complainant.
It is, therefore, ORDERED, ADJUDGED AND DECREED that the relief prayed for in the bill of complaint should be, and the same is, hereby denied; and said bill of complaint is hereby finally dismissed with prejudice, and the court costs accrued herein are taxed against the complainant, for which execution and other proper process may issue.
Meticulously and at considerable labor this Court has reviewed the issues of fact which it feels are essential in resolving the errors assigned in this cause. Moreover, we have reviewed the legal questions involved in the errors assigned. A study of the findings of the chancellor appears to us to be soundly based upon the testimony and evidence introduced in this cause and we are in accord with the conclusions of law which he has reached and, although this case dealt with troublesome issues of fact and law, we cannot with any confidence say that the chancellor was manifestly wrong either in his determination of the facts or in his interpretation of the contract and amendment letter thereto or the rules of law which are applicable.
For these reasons the decree of the chancery court is affirmed.
Affirmed.
RODGERS, P.J., and JONES, INZER and SUGG, JJ., concur.