907 So.2d 960 (2004)
FACILITIES, INC., Appellant
v.
ROGERS-USRY CHEVROLET, INC., Appellee.
No. 2003-CA-00856-COA.
Court of Appeals of Mississippi.
October 5, 2004.
Rehearing Denied November 30, 2004.
*961 Fred M. Harrell, Brandon, Richard D. Gamblin, Jackson, Glenn Gates Taylor, Ridgeland, attorneys for appellant.
Gregory Moreau Johnston, Madison, Lem G. Adams, Brandon, attorneys for appellee.
Before LEE, P.J., MYERS and CHANDLER, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Rogers-Usry Chevrolet is a car dealership operating in Brandon, Mississippi.[1] In 1985, Rogers-Usry leased a section of land from Facilities, Inc. The land was to provide the location for the car dealership. The lease was for a term of fifteen years, and in 1998 Rogers-Usry and Facilities renewed the lease until April 30, 2015. The lease provided that in addition to a base amount of rent, which would increase annually according to the Consumer Price Index, Rogers-Usry would pay Facilities bonus rent if new vehicle sales exceeded one hundred vehicles per month. The bonus rent rate of $100 applied to each new vehicle sold in excess of 100 vehicles. Facilities argues that this bonus rent provision was included in the *962 lease to compensate for Facilities' acceptance of a rent that was below market value. Thus, Facilities would profit as Rogers-Usry grew and profited. Furthermore, the lower base rent would allow Rogers-Usry flexibility as it struggled to establish its self as a business.
¶ 2. In 2000, Rogers-Usry expanded to add a tract of land a few hundred feet from its primary location. There has been much debate between the parties as to whether the expansion onto the new land was to allow Rogers-Usry to comply with a General Motors initiative which required its dealerships to conduct new vehicle sales from modern dealerships which functionally and aesthetically comply with national General Motors standards. Regardless of Rogers-Usry's motivation to use a different tract of land for its new car sales, Rogers-Usry has moved its new car sales to the new location. Although Rogers-Usry continues to use the Facilities property, Rogers-Usry now argues that it is under no obligation to continue paying Facilities bonus rent for new vehicle sales which occur on the new land.
¶ 3. Rogers-Usry filed an action in 2002 seeking a declaratory judgment on its rent obligations to Facilities under the renewed lease. Rogers-Usry argued that when it moved its new vehicle sales to the new property, it would no longer be obligated to pay Facilities bonus rent. Facilities argued that the lease provided in unambiguous terms that Rogers-Usry owed Facilities bonus rent on new vehicle sales whether the sale occurred on the dealership's new property or the sale occurred on the land leased from Facilities. Facilities counter-claimed for an accounting of the rent that was due under the lease. The chancellor ruled that, under the contract, Rogers-Usry was not obligated to pay Facilities bonus rent for new vehicle sales that did not occur on the property owned by Facilities.
¶ 4. It is from this judgment that Facilities has timely filed its appeal, arguing the following three points of error: (1) the lease is clear and unambiguous in its terms; (2) the chancellor erred in his interpretation of the bonus rent provision of the lease; and (3) the chancellor's interpretation of the lease deprives Facilities of a substantial benefit of the bargain it made in 1985 and renewed in 1998.
¶ 5. Having heard the arguments of counsel and after reviewing the briefs of the parties and the record in this case, this Court finds that the contract was not ambiguous as a matter of law. Because this issue is dispositive of the appeal before the Court, discussion of the other issues raised on appeal are unnecessary.

STANDARD OF REVIEW
¶ 6. The standard of review for questions concerning the construction of contracts are questions of law that are committed to the court rather than to the fact finder. Warwick v. Gautier Utility Dist., 738 So.2d 212, 215(¶ 8) (Miss.1999) (citing Mississippi State Highway Comm'n v. Patterson Enters., Ltd., 627 So.2d 261, 263 (Miss.1993)). This Court reviews questions of law de novo. City of Grenada v. Whitten Aviation, Inc., 755 So.2d 1208, 1214(¶ 16) (Miss.Ct.App.1999). "Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence." Id. (citing Cooper v. Crabb, 587 So.2d 236, 239, 241 (Miss.1991)). This Court is not to infer intent contrary to that in the contract. Cooper, 587 So.2d at 241. When construing a contract the court will read the contract as a whole, giving effect to all of its clauses. Whitten, 755 So.2d at 1214 (citing *963 Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss.1992)).
¶ 7. The Mississippi Supreme Court has set out a three-tiered approach for interpreting contracts. Martin v. Fly Timber Co., 825 So.2d 691, 696(¶ 11) (Miss. Ct.App.2002) (citing Pursue Energy Corp. v. Perkins, 558 So.2d 349 (Miss.1990)). First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975). If the language used in the contract is clear and unambiguous, the intent of the contract must be realized. Id. On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." Pursue Energy Corp., 558 So.2d at 352. If the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Id. However, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. Id. It is only when the review of a contract reaches this point that prior negotiations, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract. Martin, 825 So.2d at 696(¶ 11). Thus, the primary issue before this Court is whether the contract is ambiguous.
¶ 8. Reading the contract as a whole, the contract is very clear. In section 3(c) of the lease the contract reads as follows:
[i]f during any calendar month the Lessee shall sell more than 100 new automobiles, trucks, vans, and/or similar vehicles (collectively "vehicle"), the Lessee shall, in addition to the Basic Monthly Rental and Inflationary Increases in (a) and (b) above, pay as additional rent $100.00 per new vehicle sold during each calendar month, in excess of 100 vehicles. ("Bonus Rent") Such Bonus Rent shall be applicable to each calendar month during the fifteen (15) year term of this lease agreement.
¶ 9. The contract clearly provides that when Rogers-Usry sells more than 100 new vehicles in a calendar month, Rogers-Usry is to pay additional rent to Facilities. The contract speaks for itself. Reviewing section 3(c) within the context of the entire contract, no terms contradict or conflict with each other. Section 3(c) clearly provides that if the Lessee (Rogers-Usry) sells more than 100 new vehicles in a calendar month, Rogers-Usry owes the Lessor (Facilities) bonus rent regardless of the location of the sale. This Court is not inclined to infer limitations in a contract when the language of the contract expressly provides for no such limitations. Rogers-Usry is requesting that the Court derive limitations from the parties' agreement, and this Court notes that this contract is not unlimited. The bonus rent provision, along with the entire lease, will expire in 2015.
¶ 10. Because the contract is not ambiguous, there is no need to proceed beyond the four corners of the document into interpretation of the parties' intent. Thus, the chancellor erred in concluding that the parties intended for the bonus rent to apply only to new vehicles sold on the property rented by Facilities.
¶ 11. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS REVERSED AND REMANDED FOR AN ACCOUNTING OF RENT IN A MANNER CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
*964 KING, C.J., IRVING, MYERS, CHANDLER AND BARNES, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH A SEPARATE WRITTEN OPINION. BRIDGES, P.J., AND ISHEE, J., NOT PARTICIPATING.
GRIFFIS, J., Concurring in Part and Dissenting in Part:
¶ 12. Just as the majority, the chancellor found that the Lease was not ambiguous as a matter of law. The chancellor began his conclusions of law by holding:
There are no terms anywhere in the Lease which provide for payments of bonus rent on new vehicles which are sold beyond the leased premises. This Court, exclusively considering the four (4) corners of the Lease as written, and according to its terms, finds no provision in the Lease which requires Rogers-Usry to pay bonus rent on new vehicles sold at the new dealership on the RRU property.[[2]]
In an attempt to be thorough, however, the chancellor also held:
This Court further is of the opinion that it should make a finding with reference to the issue as to whether or not the provision of the payment of bonus rent on new vehicle sales beyond Facilities, Inc.'s leased premise is ambiguous.
Pre-supposing that this court found that there are no terms in the lease which either expressly provide for nor prohibit payment of bonus rent on new vehicles which are sold beyond the leased premises and, therefore, an ambiguity exists which would allow extrinsic evidence to be admitted to determine the intent of the parties, this Court is of the opinion that the ruling would be the same. Rogers-Usry, Inc. would not be required to pay bonus rent on new vehicles sold if not sold on property leased to them by Facilities, Inc.
(emphasis added).
Thus, the chancellor first determined that the Lease was not ambiguous and interpreted the Lease provision in question. Then, out of an abundance of caution, the chancellor determined that even if he had interpreted the Lease to be ambiguous the outcome would have been the same.
¶ 13. I agree with the chancellor and thus concur with the majority that the Lease was not ambiguous. I disagree with and dissent, however, from the majority's interpretation of the Lease. My interpretation is consistent with the chancellor's interpretation.
¶ 14. The chancellor rendered the following analysis of the Lease:
An analysis of what the four (4) corners of the Lease does contain is instructive. The document containing the bonus rent provision is entitled "LEASE AGREEMENT." According to Black's Law Dictionary, a lease is defined as a "contract by which one owning such property grants to another the right to possess, use, and enjoy it for specified period of time in exchange for periodic payment of a stipulated price, referred to as rent." Black's Law Dictionary, Abridged Sixth Edition, 1991, Page 615. This term by its very definition confines the lease term to the certain property which is described in the Lease.

The heading of Section 3 of the Lease, below which is contained the 3(c) bonus rent provision, is entitled "Rent." Black's Law defines "rent" as "consideration for the use or occupation of property." *965 Black's Law Dictionary, Abridged Sixth Edition, 1991, Page 899. The heading of Section 3 states that the "Lessee shall pay to Lessor, without deduction or set-off ... the following for the use and occupancy of the Leased property." This statement reveals that all rent listed under Section 3, including the base rent and bonus rent, is given in consideration "for the use and occupancy of the Leased property," thus tying those rent payments exclusively to the Facilities, Inc. premises, and not the RRU property. Further, Section 3(c) specifically uses the term "Bonus rent" which, when considering the definition of rent above, logically ties those payments as consideration for use of the property which is the subject of the Lease  the leased premises.
Also, Section 5.1 of the Lease which is entitled "Use" mandates that Rogers-Usry "shall use and occupy the Leased property only as a retail automobile dealership and automobile service center."
The term "retail" includes both new and used cars which are sold to a consumer or end-user and not a wholesaler or reseller of vehicles. Nothing in Section 5.1 requires Rogers-Usry to use the premises to sell "new" automobiles, only "retail" automobiles. Rogers-Usry will continue to use Facilities, Inc. premises for the retail sales of used vehicles and to operate a used vehicle service center, and thereby comply with requirements of Section 5.1. Facilities, Inc. asserts that because the RRU property is located nearby, approximately 250-300 feet East of the Facilities, Inc. property, and because Rogers-Usry will continue to use the Facilities, Inc. property as part of its integrated operation, that bonus rent should be paid. This assertion is misplaced. Whether the RRU property is 300 or 3000 feet from the Facilities, Inc. property is immaterial. The Lease and rent are unequivocally tied to the Facilities, Inc. property.
Robert Rogers stated during his testimony at trial that he believed Rogers-Usry is obligated to pay bonus rent at the new dealership because the RRU property is located within Rogers-Usry's geographic area of responsibility assigned to Rogers-Usry by General Motors. However, when Robert Rogers was asked to identify any provisions in the Lease tying the payment of bonus rent to the area of responsibility, he was unable to do so. There is absolutely no language anywhere in the four (4) corners of the Lease which supports the argument advanced by Robert Rogers that bonus rent is owed on any cars sold by Rogers-Usry within its area of responsibility.
(Emphasis added).
¶ 15. The chancellor was also correct to rely on Polk v. Gibson Products Co. of Hattiesburg, Inc., 257 So.2d 225 (Miss. 1972). In Polk, the supreme court upheld a chancellor's dismissal of a complaint filed by Polk, the lessor, against Gibson, the lessee. Polk argued that Gibson remained responsible for bonus rent after Gibson moved its store to another location and used the leased premises as a warehouse and later sublet it to a tenant whose annual sales did not provide bonus rent. Id. at 227. The court found that Gibson was only responsible for paying the base rent after moving its store because there was no lease provision that required Gibson to maintain an operation on the leased premises which would provide bonus rent to Polk. Id. at 228.
¶ 16. The Lease we review here was similar to Polk. There was no term in the Lease that required Rogers-Usry to maintain its new vehicle sales operations on the *966 Facilities property and generate bonus rent. Instead, a reasonable reading of the four corners of the Lease supports a finding that bonus rent will be paid for sales on the leased premises.
¶ 17. Notwithstanding the foregoing discussion, it is more interesting to note that the chancellor and this Court have offered two "reasonable," yet different interpretations of the Lease. When a contract is unambiguous, this Court is "not in such cases so concerned with what the parties may have meant or intended but rather with what they said, for the language employed in a contract is the surest guide to what was intended." Shaw v. Burchfield, 481 So.2d 247, 252 (Miss.1985); Palmere v. Curtis, 789 So.2d 126, 131 (Miss.Ct.App.2001). Disagreement over the meaning of a provision of the contract does not make the contract ambiguous. Id. at 130-31. Nevertheless, "if the terms of a contract are subject to more than one reasonable interpretation, it is a question properly submitted to the jury." Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752(¶ 8) (Miss. 2003) (citing Mississippi Transp. Comm'n v. Ronald Adams Contractor, Inc., 753 So.2d 1077, 1087 (Miss.2000); Garner v. Hickman, 733 So.2d 191, 195 (Miss.1999)).
¶ 18. I am of the opinion that the Lease is subject to more than one reasonable interpretation. Thus, based on Royer Homes of Mississippi, Inc., I believe we must consider the Lease to be ambiguous. See Mississippi Farm Bureau Cas. Ins. Co. v. Britt, 826 So.2d 1261, 1265(¶ 14) (Miss.2002) (an ambiguity exists in an insurance contract when the policy can be interpreted as having two or more reasonable meanings). Accordingly, we must defer to the chancellor as the finder-of-fact and limit our standard of review.
¶ 19. The chancellor determined that the fundamental question was whether a landlord is entitled to receive rent from property in which the landlord has absolutely no interest. The chancellor correctly held that the express terms of the Lease support a finding that Facilities was not entitled to receive bonus rent for Rogers-Usry's occupancy and use of property not owned by Facilities. The chancellor was neither clearly erroneous nor manifestly wrong in this determination. For these reasons, I am of the opinion that the chancellor was correct and should be affirmed.
NOTES
[1] The dealership was originally Rogers-Dingus Chevrolet. The dealership was later changed to Rogers-Usry Chevrolet. Although the dealership is presently operating as Rogers-Dabbs Chevrolet/Hummer, it will be referred to as Rogers-Usry for the sake of clarity.
[2] RRU, LLC is a Mississippi limited liability company that owns the new property and building leased to Rogers-Usry. The owners of RRU are John Rogers, Sandra Rogers, and Joe Usry.